28 C.C.P.A. (Patents)

## In re CARLSON.
## Patent Appeal No. 4397.

Court of Customs and Patent Appeals.
Dec. 9, 1940.

George S. Hastings, of Brooklyn, N. Y. (Wentworth B. Clapham, of Brooklyn, N. Y., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and Jackson, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 8, 9, 11, 12, 13, 17, and 23 to 31, inclusive, in appellant's application for a patent for an alleged invention relating to an automatic scrap (short filler) tobacco feed for cigar machines.

Seventeen claims were allowed by the Primary Examiner.

The appealed claims may be divided into three groups as follows: Group 1, claims 23 to 31, inclusive, of which claim 25 is representative; group 2, claims 8, 11, 12, 13, and 17, of which claim 8 is representative; and group 3, claim 9.

Claims 25, 8, and 9 read:

"25. In a machine for forming cigar bunches, the combination with side and bottom belts forming a tobacco receiving channel, of a hopper for holding a supply of tobacco, means cooperating with said hopper and channel for feeding tobacco from said hopper into said channel to form a stream of tobacco therein, means coacting with said belts to forward the stream of tobacco, a bunch rolling apron, a device at the forward portion of said channel for separating a length from said stream substantially equal to the length of the bunch to be formed, and transfer mechanism including a reciprocable element movable downwardly onto the upper surface of said bunch length and displacing said length downwardly with respect to said channel, for transferring the unshaped bunch length having substantially the cross-section of said channel to said apron, and means for holding back from the stream of tobacco fed from said hopper all tobacco above a predetermined height in said channel to provide a stream with a cross-section sufficient when rolled to form a bunch of the desired diameter."

"8. In a cigar bunch machine, the combination with a vertical intermittently rotating hopper for holding a supply of filler tobacco, of means for feeding tobacco from said hopper in a continuous approximately bunch width stream, a cutter for separating approximately a bunch length from the forward portion of said stream, means for displacing the bunch lengthwise relative to the length of said stream, out of line with said stream, and a rolling apron for rolling said separated and displaced bunch length to form a cigar bunch."

"9. In a cigar bunch machine, the combination with a vertical intermittently rotating hopper for holding a supply of filler tobacco, of means for feeding tobacco from said hopper in a continuous approximately bunch width stream, a cutter for separating approximately a bunch length from the forward portion of said stream, means for displacing the bunch length sidewise relative to the length of said stream, out of line with said stream, and a rolling apron for rolling said separated and displaced bunch length to from a cigar bunch, said feeding means including devices acting on the pieces of filler tobacco to arrange the tobacco in said stream with elongated pieces extending in a generally lengthwise direction relative to the length of said stream whereby the pieces will be arranged lengthwise in the completed bunch."

The references are: Bohls, 493,148, Mar. 7, 1893; Rundell, 1,586,330, May 25, 1926; Bronander, 1,637,800, Aug. 2, 1927; Carlson, 1,810,904, June 23, 1931.

As will be observed from the quoted claims, appellant's device is provided with a tobacco hopper rotatable about a vertical axis, and a "receiving" or "feed" channel. In order to prevent the tobacco from sticking to the sidewalls, the hopper is provided with a number of agitators which rotate intermittently in the same direction as the hopper but at a different rate of speed. The bottom of the hopper consists of a stationary cone mounted on a bottom plate. The plate is provided with a slot which overlies the feed channel. One side of the stationary cone is flattened, as stated in appellant's application, "along a vertical plane coinciding with one side of the slot" in the plate forming the bottom of the hopper to permit the tobacco in the hopper to pass into the slot. The feed channel is formed by two side guide belts and a bottom guide belt. The belts travel in an opposite direction from, and in synchronism with, the hopper, "whereby the serrated lower edges of the hopper serve to level the stream of tobacco in the channel and prevent chocking of the same." The serrated edges also serve to turn the pieces of tabacco so that they will lie in a longitudinal direction lengthwise of the channel. The hopper, the agitators, and the belts forming the feed channel are driven in synchronism. A bunch length of the tobacco in the forward end of the channel is compressed and, by means which need not be here described, is transferred to a bunch rolling apron where it is formed into a cigar bunch.

The patent to Bohls relates to a machine for feeding tobacco to a cigarette forming mechanism, and discloses a vertically rotating hopper from which, by means of rotary agitators in the hopper, the filler tobacco is fed in a continuous stream through an outlet in the bottom of the hopper onto a belt provided with teeth moving beneath

the hopper. The belt carries the tobacco to "picker rollers." As the tobacco is being conveyed by the belt to the first "picker roller" it passes beneath a guard plate which forces it down between the teeth of the belt. The patentee states that, as the first "picker roller" moves at a higher rate of speed than the belt, "the teeth of the latter [the belt] somewhat retard the tobacco and a further combing or disentangling takes place."

The patent to Rundell relates to a long filler type of cigar making machine, and discloses a machine in which the tobacco is placed manually in a "cross feed" channel formed by two side belts and a bottom belt. No hopper is disclosed. The tobacco in the channel moves beneath a cutter which separates a bunch length of the tobacco which is delivered to a bunch rolling mechanism. The patentee states that in the type of machine there involved "individual charges of filler are severed from a continuous stream, transferred to a compressing device, there compressed, then transferred to a rolling device where a wrapper is applied to it."

The patent to Bronander relates to a device for feeding scrap tobacco to cigar making machines, and discloses a machine in which the tobacco is fed from a hopper onto a belt. The patentee states that the tobacco must be leveled on the belt, and that "the long scraps must be turned so that they will lie along the conveyor if they are not already lying in that direction." In order that that purpose may be accomplished, the patentee's device is provided with what he terms "S-shaped rakers," which, it is stated, "gradually level the stream of tobacco [on the belt], straighten long scraps which need it, and throw back all tobacco in excess of the ultimate quantity required for final delivery."

The patent to Carlson relates to a rotary tobacco feed for cigar machines, and discloses a hopper having a "stationary central portion [with agitators therein] and a pair of outwardly dished revolving ends or sidewalls." The agitators serve to "loosen tobacco and to arrange elongated tobacco scraps with their lengths extending in one direction." The stationary central portion is supported on a base plate by means of brackets. There is an opening in the bottom of the hopper and a "passage" (formed by a "guide plate" and the "sidewalls," which are formed by the brackets) leading therefrom to a feed belt. The patentee states that the agitating prongs in the stationary central portion of the hopper pass the opening in the bottom of the hopper in a direction opposite to that in which the feed belt is moving, and that the tobacco is thus prevented from jamming at such opening and in the passage leading to the feed belt.

Claims 23 to 31, inclusive, were rejected by the tribunals of the Patent Office on the patent to Rundell in view of the patent to Carlson, the Primary Examiner stating in his statement to the Board of Appeals that the patent to Rundell discloses every feature of the structure defined by those claims, "except for the provision of a hopper, means for feeding filler tobacco therefrom into the channel and mechanism for holding back surplus tobacco therein," and that the patent to Carlson discloses a hopper for feeding the tobacco onto a cross-feed channel and means for holding "back from the stream of tobacco fed from said hopper all tobacco above a predetermined height in said channel to provide a stream with a cross-section sufficient when rolled to form a bunch of the desired diameter," as called for by those claims—the means, in the patent to Carlson, for holding back from the stream all tobacco above a predetermined height, as called for by claims 23 to 31, inclusive, being the "agitating prongs," the "guide plate," and the "sidewalls formed by the brackets." The examiner further stated that it would be obvious to one skilled in the art that a hopper, such as that disclosed in the patent to Carlson, could be used to feed tobacco onto the feed channel disclosed in the patent to Rundell. In answer to the argument of counsel for appellant that, in providing the structure of Rundell with a hopper such as that disclosed in the patent to Carlson, it would be necessary to greatly narrow the opening in the hopper of Carlson for the passage of the tobacco filler onto the Rundell feed channel in order to secure a cigar bunch of the desired diameter, the examiner stated that such an alteration in the Carlson hopper would be obvious to one skilled in the art.

The patent to Carlson clearly teaches the desirability of providing a device, such as that disclosed by Rundell, with a hopper for automatically feeding the cross-feed channel, and we are unable to hold on the record before us that the Carlson hopper could not be added to the Rundell device without the exercise of inventive genius.

Claims 8, 11, 12, 13, and 17, of which quoted claim 8 is illustrative, were rejected by the tribunals of the Patent Office on the patent to Rundell in view of the patents to Carlson and Bohls.

The patents to Rundell and Carlson were applied by the Primary Examiner to that group of claims as they were to claims 23 to 31, inclusive. It will be observed that quoted claim 8 calls for a vertical intermittently rotating hopper, and it will be recalled that the patent to Bohls discloses a vertically rotating hopper. In holding that it would be obvious to provide the Rundell structure with a vertically rotating hopper, such as disclosed in the patent to Bohls, the examiner said: " * * * Thus, as suggested by Carlson, it would be obvious and would not entail invention to place the hopper mechanism * * * of Bohls over the belt [feed channel] * * * of Rundell to feed tobacco thereto. Since both Carlson's and Bohl's hoppers are synchronized with the movement of the belts to which they feed, it would be obvious to synchronize the hopper movement in the modified machine with the movement of belt * * * [the feed belt] in Rundell. Since belt * * * [the feed belt] of Rundell moves intermittently, the hopper synchronized therewith in the modified machine would likewise rotate intermittently. This would obviously occur to one skilled in the art especially in view of the complete synchronization shown in Bohls and in Carlson between the hopper and the belt feed. As with placing the Carlson hopper over belt * * * [the feed belt] of Rundell as set forth above, the Bohl's hopper should likewise be so spaced from the belt and arranged with an outlet of such size that the quantity of tobacco fed would conform with the requirements of the Rundell machine, i. e., provide for a stream of approximately bunch width and of a cross-section sufficient when rolled to form a bunch of the desired diameter. To do this it would merely be necessary to have the outlet in the bottom of Bohl's hopper of the same width as the Rundell [feed] channel and to have the moving wall of the hopper spaced from the belt * * * to obtain a stream of the proper height."

It is argued by counsel for appellant that the vertically rotating hopper, disclosed in the patent to Bohls, could not be placed on the Rundell machine without resorting to "very radical reconstruction in order to associate it for operation with Rundell's channel."

In the quoted excerpt from his statement to the Board of Appeals, the Primary Examiner explained how Bohls' hopper could be modified so that the proper quantity of tobacco would be fed onto the feed belt in the Rundell device, and held that such modification would be obvious to one skilled in the art.

We have given careful consideration to the arguments presented here by counsel for appellant, but are unable to hold that it would involve invention to so modify the Bohls hopper that the proper quantity of tobacco would be fed onto the feed belt of the Rundell device.

Claim 9, which contains the limitation that the means for feeding the tobacco "from" the vertical intermittently rotating hopper includes means to arrange the elongated pieces of tobacco lengthwise of the completed cigar bunch, was rejected by the tribunals of the Patent Office on the patent to Rundell in view of the patents to Carlson, Bohls, and Bronander, the first three named references being applied to the structure defined in that claim precisely as they were applied, so far as pertinent, to the other claims here on appeal.

The limitation contained in claim 9, that the feeding means is provided with devices designed to arrange elongated pieces of tobacco so that they will be lengthwise in the completed cigar bunch, is, as was held by the Primary Examiner and as hereinbefore noted, clearly disclosed in the patent to Bronander wherein the means designed for such purpose were termed "S-shaped rakers."

The tribunals of the Patent Office concurred in holding that having provided the Rundell device with the Bohls vertically rotating hopper, in the manner hereinbefore set forth, it would not involve invention to provide such a modified Rundell device with "S-shaped rakers," such as disclosed in the patent to Bronander, over the feed belt to arrange the elongated pieces of tobacco in the manner set forth in claim 9. We are in accord with that holding.

The decision of the Board of Appeals is affirmed.

Affirmed.